UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

REINIER JONKIEL ERRATE (A-Number: 244-285-383),

Petitioner,

v.

WARDEN, CALIFORNIA CITY DETENTION FACILITY,

Respondent.

Case No. 1:26-cv-4918-TLN-JDP

FINDINGS AND RECOMMENDATIONS

Petitioner Reinier Jonkiel Errate was paroled into the United States in 2023 and was re-detained by ICE in 2026. Petitioner, now proceeding with counsel, has filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2241, arguing that his re-detention without a bond hearing violates the Fifth Amendment. Respondent counters that petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c). For the following reasons, I recommend that the amended petition be granted and that petitioner be provided a bond hearing.

**Background**

In November 2023, petitioner presented himself at a port of entry to the United States, was detained by immigration officials, and then was paroled into the United States. ECF No. 6-1 at 2. On June 9, 2026, petitioner was convicted of breaching a retail fuel dispenser, tampering with a component of a retail fuel dispenser, and retail fuel theft in violation of Florida Statute

§ 812.0151. ECF No. 6-3 at 1. On the following day, petitioner was re-detained by ICE upon his release from a local jail. ECF No. 10 ¶ 19; ECF No. 6 at 2. Petitioner has not been provided a bond hearing.

**Procedural History**

On June 26, 2026, petitioner, initially proceeding pro se, filed a petition for writ of habeas corpus.[1] ECF No. 1. On August 21, 2026, I ordered the appointment of counsel for petitioner. ECF No. 8. On September 8, 2026, petitioner, proceeding through counsel, filed an amended petition. ECF No. 10. Respondent has filed an answer, ECF No. 13, and petitioner has filed a reply, ECF No. 14.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his re-detention without a bond hearing violates the Fifth Amendment. ECF No. 10 ¶¶ 39-46. Respondent counters that petitioner's detention is mandatory under 8 U.S.C. § 1226(c) such that it does not violate the Fifth Amendment. ECF No. 6 at 2-7.

---

[1] The court referred the matter to me on June 29, 2026. ECF No. 3.

Under section 1226(c), the attorney general "shall take into custody" any noncitizen who: (i) "is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of [Title 8]"; and (ii) "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E)(ii).

While respondent argues that petitioner "fits these criteria," petitioner asserts that neither criterion is satisfied. *See* ECF No. 6 at 4; ECF No. 10 ¶¶ 22-38. I find that respondent has failed to show that petitioner is inadmissible within the meaning of section 1226(C)(1)(E)(i). Consequently, I do not consider whether his convictions fall within the meaning of section 1226(c)(1)(E)(ii)).

When a noncitizen arrives at the border without documentation for lawful admission, they are deemed "applicants for admission" and subject to mandatory detention under 8 U.S.C. § 1225(b). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). However, "applicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" *Id*. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)). "Immigration authorities at ports of entry have historically exercised the authority to parole aliens into the United States for various limited purposes, including for prosecution." *Vazquez Romero v. Garland*, 999 F.3d 656, 660 (9th Cir. 2021). "The government's historical parole authority has been codified in § 1182(d)(5), which gives the Attorney General the discretion to parole into the United States 'any alien applying for admission to the United States.'" *Id*. (quoting 8 U.S.C. § 1182(d)(5)(A)).

Here, petitioner presented himself at a port of entry, was detained by immigration officials, and then was paroled into the United States. ECF No. 6-1 at 2. Throughout this action, petitioner has alleged that he was issued a Form I-94 when he was paroled into the United States. *See* ECF No. 7 at 3; ECF No. 11 ¶ 36; ECF No. 14 at 3. Respondent has not contested that allegation. As the Court of Appeals held, this form "is typically given to § 1182(d)(5)(A) parolees." *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007). Respondent has not argued that petitioner was paroled under a different statute. Under these circumstances, I find

that petitioner was paroled under section 1182(d)(5)(A).

The Court of Appeals has held that "written notice is essential to effectuate a termination" of a parole under section 1182(d)(5)(A). *United States v. Lagarda-Aguilar*, 617 F.2d 527, 528 (9th Cir. 1980). In *Lagarda-Aguilar*, the government escorted a noncitizen to the Mexican border for removal even though the noncitizen was paroled under section 1182(d)(5)(A). *Id*. at 527. The Court of Appeals found that the noncitizen "was never furnished written notice of termination of the parole" and there was no "indication in the record that he was ever advised, either orally or in writing, that the parole was to terminate automatically on a given date. Indeed, there is no record of any formal termination of the parole status." *Id*. The government argued on appeal that any "violation of the regulation requiring written notice made no difference in this case because the alien had actual notice of a termination by [government] agents when they took him to the border." *Id*. at 528. The Court of Appeals rejected that argument, holding that "[t]ermination of parole should not be, and is not under applicable regulations, left to the whim of [government] agents in that manner. The requirement of written notice is the only safeguard, for both the alien and the United States government, that parole status is administered in an orderly manner." *Id*.

Here, there is no evidence that petitioner's parole under section 1182(d)(5)(A) has been terminated. In the first amended petition, petitioner alleges that the government "has not asserted that any parole granted to him was terminated." ECF No. 10 ¶ 36. Respondent does not contest this allegation. *See* ECF No. 13. In his traverse, petitioner again argues that there is no evidence that his parole has been terminated. ECF No. 14 at 9. Because "written notice is essential to effectuate a termination" of a parole under section 1182(d)(5)(A), I find that petitioner's parole has not been terminated. *See Lagarda-Aguilar*, 617 F.2d at 528.

To substantiate mandatory detention under section 1226(c), respondent asserts that petitioner is inadmissible under 8 U.S.C. §§ 1182(a)(6)(A) and (a)(7)(A)(i)(I). ECF No. 6-1 at 2. However, neither provision applies to him because he is on parole. First, section 1182(a)(6)(A) provides that "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." 8 U.S.C. § 1182(a)(6)(A)(i). Because petitioner is paroled under section

1182(d)(5)(A), he is not "present in the United States without being admitted or paroled" for purposes of section 1182(a)(6)(A). Second, section 1182(a)(7)(A)(i)(I) provides that "any immigrant at the time of application for admission who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter" is inadmissible. However, as noted, petitioner was provided a Form I-94 and paroled into the United States. ECF No. 11 ¶ 36. Respondent does not explain why, under these circumstances, petitioner is inadmissible within the meaning of section 1182(a)(7)(A)(i)(I).[2]

Accordingly, respondent has failed to show that petitioner is inadmissible within the meaning of section 1226(c)(1)(E)(i). Consequently, petitioner's detention is not governed by section 1226(c).[3] Instead, I find that petitioner's detention is governed by section 1226(a). Petitioner, as noted, claims that his re-detention without a bond hearing violates the Fifth Amendment. ECF No. 10 ¶¶ 39-46. Respondent only responds to petitioner's due process claim through the lens of section 1226(c). *See* ECF No. 6 at 4-7.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]."

---

[2] Indeed, respondent has not offered any analysis regarding inadmissibility. Instead, respondent simply states that "Petitioner is charged with inadmissibility under 8 U.S.C. § 1182, which satisfies the requirement of subsection (i)" of section 1226(c)(1)(E). ECF No. 6 at 4. To support that assertion, respondent cited petitioner's notice to appear, which provides that petitioner is amenable to removal on the grounds of the two sections analyzed above. *See* ECF No. 6-1 at 2. However, petitioner's notice to appear does not provide any analysis as to why petitioner is inadmissible under either section. *See id.*

[3] As a result, respondent's argument that petitioner should request a *Matter of Joseph* hearing is misplaced. *See* ECF No. 13 at 1-2.

*Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted). In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." 408 U.S. at 482. The court observed that while "the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty." *Id.* at 481-84.

Recently, confronted with questions similar to those raised by petitioner, courts in this Circuit have found that noncitizens released from ICE custody acquire a liberty interest in their continued release. *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASPKJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)); *Shoimov v. Chestnut*, No. 1:25-cv-1603-CSK, 2026 WL 35624, at *5 (E.D. Cal. Jan. 6, 2026). I agree with the bulk of other courts to have considered the issues presented here and find that petitioner has a protected liberty interest in his continued release.

Immigration officials paroled petitioner in 2023. ECF No. 6-1 at 2. Since then, petitioner has lived in the United States, subject to ICE supervision but outside of custody, for over two years. Petitioner thereby formed "enduring attachments of normal life." *See Morrissey*, 408 U.S. at 482. I conclude that petitioner's initial release and time out of custody have created a constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No.

25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner has a private interest in continued release that developed over the more than two years between his release and his re-detention. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation without a bond hearing is high. Prior to releasing petitioner, immigration officers necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of

erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondent offers no evidence or argument indicating that any procedural safeguards have been employed following petitioner's re-detention; more generally, they give the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty. *See id*. Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Respondent has not provided any information about the additional burden that would fall on them as a result of being required to provide a bond hearing. *See* ECF Nos. 6 & 13.

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violates his due process rights. Given this finding, I must determine the appropriate remedy. Petitioner requests a bond hearing. ECF No. 1 at 15. Respondent argues that "only appropriate relief is a bond hearing, not release from detention." ECF No. 6 at 7.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). The Court has also observed, however, that "release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). "Indeed, common-law habeas corpus was, above all, an adaptable remedy. Its precise application and scope changed depending upon the circumstances." *Id.*; *see also Carafas v. LaVallee*, 391 U.S. 234, 239 (1968) (The federal habeas statute "does not limit the relief that may be granted to discharge of the applicant from physical custody").

Before re-detaining petitioner, due process would ordinarily require a pre-deprivation hearing. *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("[T]he [Supreme] Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."). However, "there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate." *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025). For example, in *Martinez Hernandez v. Andrews*, the court held that, where the petitioner had allegedly violated his parole, a post-deprivation hearing was appropriate because it was "at least arguable that providing [the petitioner] with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight." No. 1:25-cv-1035-JLT-HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025).

Here, as noted, petitioner was convicted of breaching a retail fuel dispenser, tampering with a component of a retail fuel dispenser, and retail fuel theft in violation of Florida Statute § 812.0151. ECF No. 6-3 at 1. On the following day, petitioner was re-detained by ICE upon his release from a local jail. ECF No. 10 ¶ 19; ECF No. 6 at 2. Under these circumstances, I find that it is "at least arguable that providing [petitioner] with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight." *See Martinez Hernandez v. Andrews*, 2025 WL 2495767, at *12. Accordingly, the present record does not establish that petitioner was constitutionally entitled to a pre-deprivation hearing.

Due process still required, however, that petitioner be afforded a "prompt post-deprivation hearing." *See Guillermo M.R.*, 791 F. Supp. 3d at 1036. Petitioner, as noted, has not been afforded such a hearing. Accordingly, I find that the appropriate remedy is a bond hearing. *See Archundia v. Wofford*, No. 1:26-cv-1452-DJC-CSK, 2026 WL 607977, at *2 (E.D. Cal. Mar. 4, 2026) (finding a bond hearing to be the proper remedy where petitioner was previously arrested for "allegedly engaging in prostitution") (citing *J.S.H.M. v. Wofford*, No. 1:25-cv-1309-JLT-SKO, 2025 WL 2938808, at *15-16 (E.D. Cal. Oct. 16, 2025)).

Lastly, the parties dispute who should carry the burden at the bond hearing. *See* ECF No. 1 at 15; ECF No. 6 at 7-8. Because petitioner's re-detention implicates due process concerns, the government must show by clear and convincing evidence that petitioner is a danger to the community or a flight risk. *See Martinez v. Clark* 124 F.4th 775, 780 (9th Cir. 2024); *Lopez v. Garland*, 631 F. Supp. 3d 870, 882 n.9 (collecting cases).

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The amended petition for writ of habeas corpus, ECF No. 10, be GRANTED.
2. Within seven days of the court's order, petitioner (A-Number: 244-285-383) shall be provided a bond hearing before a neutral adjudicator. Within 24 hours of the filing of the court's order, respondent shall personally serve petitioner with the court's order and file proof of such service on the docket. At this hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight, and petitioner shall be allowed to have counsel present.
3. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within three days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within three days of service of the objections. The parties are advised that failure to file

objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: October 9, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE